IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEJUAN I JENKINS, #Y43195, <br><br>  Plaintiff, <br><br> v. <br><br> ANTHONY WILLS, <br> JOSHUA SCHOENBECK, <br> TONYA D. KENNER, <br> ANTHONY B. JONES, <br> C/O QUINN, <br> SGT. PHILLIPS, <br> C/O GARCIA, <br> C/O HOUSE, and <br> LT. KEIFER, <br><br>  Defendants. | Case No. 24-cv-00476-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Kejuan Jenkins, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Second Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE SECOND AMENDED COMPLAINT

Plaintiff alleges that he was transferred to Menard Correctional Center (Menard) and placed in segregation on March 30, 2022, after receiving a disciplinary ticket for assaulting a staff member. (Doc. 25, p. 6). Since his arrival at Menard, because he has a staff assault on his record, Plaintiff claims that he has not received fair disciplinary hearings, and he has been subjected to cruel and unusual punishment. (*Id.*).

A few days following his transfer to Menard, on April 2, 2022, Correctional Officers Garcia, Quinn, and Martinez took Plaintiff to a "bullpen" area, where they beat and maced him. (Doc. 25, p. 6). When Plaintiff returned to his cell, he discovered that his mattress had been taken, and the water pressure for his sink had been turned up so that the water would burst out of the faucet flooding his cell whenever he would use the sink. Later that evening, the water to his cell was turned off completely. When he asked a correctional officer why he did not have a mattress and running water, the correctional officers said it was because he was a staff assaulter. Plaintiff was forced to sleep on the bed's metal frame, which was covered in feces. (*Id.*).

On April 6, 2022, Plaintiff had a hearing before Adjustment Committee Members Joshua Schoenbeck, Anthony Jones, and Tonya Kenner on the disciplinary ticket issued for assaulting the staff member at his previous institution. (Doc. 25, p. 6). Plaintiff pled not guilty stating that the lieutenant had swung at him first, and he was only defending himself. During the hearing, Plaintiff informed the committee members that his identification number was incorrectly recorded on the disciplinary ticket. Kenner told Plaintiff that he would be provide a corrected copy in the mail. Plaintiff responded that pursuant to IDOC regulations, clerical errors are to be corrected before there is a hearing on a disciplinary ticket. Kenner told Plaintiff that he should have thought about the rules before he "caught a staff assault." Plaintiff asked Correctional Officer Garcia to take him

back to his cell. Before leaving the hearing, Plaintiff informed Schoenbeck that Garcia had beat and maced him, denied him medical treatment, took his mattress, and turned his water pressure on so high that his cell flooded. Schoenbeck responded, "Yeah, that's going to happen when you catch a staff assault, I don't care that your cell is flooded or that my c/o beat you because you deserve it for beating on staff, trust me your stay here is only going to get worse, welcome to Menard." (*Id.*). On the way back to his cell, Garcia punched Plaintiff in the stomach for trying to "get [Garcia] in trouble." (*Id.* at p. 7). Plaintiff was found guilty of the disciplinary ticket and sanctioned to ninety days in segregation. During his time in segregation, for fifteen to twenty days, he was without running water and a mattress. He was also denied meals on multiple occasions. At some point during the ninety days, Plaintiff was moved to a cell that was filthy. Plaintiff alleges that the cell was covered in feces. He asked for cleaning supplies, and Garcia denied the request. (*Id.*).

Over a year later, Plaintiff received another disciplinary ticket. (Doc. 25, p. 7). He had a hearing before the Adjustment Committee Members Schoenbeck and Kenner on July 12, 2023. The disciplinary ticket was issued after a curtain was illicitly hung in Plaintiff's cell so that it blocked the view of security. Plaintiff pled not guilty because of problems with the ticket. Specifically, the ticket did not have the correct time and date, and the ticket did not specify who hung the curtain – Plaintiff or his cellmate. Plaintiff's cellmate also received a disciplinary ticket for the same offense and pled not guilty. Kenner told Plaintiff that if neither he nor his cellmate pled guilty, then they would both be found guilty of the violation. Plaintiff then pled that he did not have a curtain up in his cell. Schoenbeck told Plaintiff that he was going to make sure that Plaintiff was "put behind the door with a maced mattress." Before Plaintiff was returned to his cell, his cell and mattress were sprayed with mace by a correctional officer. For seven days, he was kept in the cell without running water and with a mattress soaked with mace. (*Id.*).

Later that year, on October 12, 2023, Plaintiff received a third disciplinary ticket. (Doc. 25, p. 7). On that day, Plaintiff and other inmates were being escorted to their cells with their hands handcuffed behind their backs. Sergeant Phillips told Plaintiff to pull up his pants. Plaintiff explained that he could not pull up his pants or perform certain movements due to a previous shoulder injury. (*Id.*). Plaintiff told Phillips he could comply with the order if Phillips helped him pull up his pants. (*Id.* at p. 8). Phillips told Plaintiff he was "retarded" and took Plaintiff to segregation. Plaintiff claims that he was then beaten and maced by Correctional Officers House, Quinn, and Keifer at the direction of Sergeant Phillips and Lieutenant Schoenbeck. When Plaintiff was returned to his cell, he overheard Quinn tell House to turn off the water to his cell and "to keep it turned off while he's back here." (*Id.*).

Plaintiff had a hearing on October 18, 2023, before Adjustment Committee Members Schoenbeck and Anthony Jones. (Doc. 25, p. 8). Plaintiff pled not guilty and stated that his medical records would demonstrate that he could not pull up his pants as directed by Sergeant Phillips because of a medical issue, and again, the ticket contained clerical errors that should have been corrected prior to the hearing – his identification number was incorrect and his name misspelled. (*Id.*). Plaintiff was found guilty and sanctioned with twenty-eight days in segregation.

**PRELIMINARY DISMISSALS**

The Court dismisses any claims, including excessive force, retaliation, and cruel and usual punishment, that Plaintiff is intending to bring against Correctional Officers Martinez and John Doe Correctional Officers. These individuals are not listed as defendants, and the Court will not treat them as parties. *See Myles v. United States,* 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

The Court also dismisses Plaintiff's claims of retaliation. To proceed on a retaliation claim,

a plaintiff must first allege he was engaged in an activity protected by the First Amendment. *See Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012); *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). To the extent Plaintiff is claiming that Defendants retaliated against him due to his involvement in a staff assault, such allegations do not state a claim for retaliation. Involvement in a physical altercation with a member of staff is not protected by the First Amendment. *See Hawkins v. Mitchell*, 756 F. 3d 983, 996 (7th Cir. 2014) (a plaintiff must allege that the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation").

Finally, the Court dismisses Plaintiff's claims of negligence, as negligent conduct does not rise to the level of a constitutional violation. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("negligent conduct by a state official does not implicate the Due Process Clause" or the Eighth Amendment).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment excessive force claim against Garcia and Quinn for spraying Plaintiff with mace and physically assaulting Plaintiff on April 2, 2022.

**Count 2:** Fourteenth Amendment claim against Wills, Schoenbeck, Jones, and Kenner for denial of due process in connection with the disciplinary hearing held on April 6, 2022.

**Count 3:** Eighth Amendment excessive force claim against Garcia for punching Plaintiff on April 6, 2022.

**Count 4:** Eighth Amendment cruel and unusual punishment claim against Garcia, Quinn, and Schoenbeck for repeatedly mistreating Plaintiff while he was in segregation in the spring of 2022.

**Count 5:** Fourteenth Amendment claim against Kenner and Schoenbeck for denial of due process in connection with the disciplinary hearing held on July 12, 2023.

|  |  |
|---|---|
| **Count 6:** | Eighth Amendment cruel and unusual punishment claim against Schoenbeck for directing that Plaintiff's mattress be sprayed with mace and his water turned off on July 12, 2023. |
| **Count 7:** | Eighth Amendment excessive force claim against Phillips, House, Quinn, Keifer, and Schoenbeck for spraying Plaintiff with mace and physically assaulting Plaintiff on October 12, 2023. |
| **Count 8:** | Eighth Amendment cruel and unusual punishment claim against Quinn and House for spraying Plaintiff's mattress with mace and turning off the water to his cell on October 12, 2023. |
| **Count 9:** | Fourteenth Amendment claim against Wills, Schoenbeck, and Jones for denial of due process in connection with the disciplinary hearing held on October 15, 2023. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Severance

Unrelated claims against different defendants belong in separate lawsuits. *George v. Smith*, 507 F.3d 605, 607 (citing 28 U.S.C. § 1915(b)). And, the Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez,* 860 F.3d 434, 436 (7th Cir. 2017).

Relatedly, Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Thus, to join defendants under Rule 20, at least one claim against the first defendant must be transactionally related to at least one claim against the second defendant and so on. If this requirement is not met, the defendants were improperly joined, and the actions must be severed.

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit. However, this Rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., Federal Practice & Procedure).

In this current lawsuit, Plaintiff asserts three groups of allegations that are not transactionally related: (1) allegations against Garcia, Quinn, Wills, Schoenbeck, Jones, and Kenner for events that occurred in and around April 2022; (2) allegations against Schoenbeck and Kenner for events that occurred in and around July 2023; and (3) allegations against Quinn, Wills, Schoenbeck, Jones, House, Keifer, and Phillips for events that occurred in and around October 2023.

Plaintiff attempts to describe each group of allegations as linked because the constitutional violations all resulted from the fact that he has been labeled a "staff assaulter." This reasoning is not sufficient to establish proper joinder under Rule 20. The motivation behind the constitutional violations may all be the same, but the factual inquiries into whether Defendants denied Plaintiff due process and subjected him to cruel and unusual punishment on three occasions, months apart in time, and concerning unrelated disciplinary tickets are completely distinct and separate from each other. Each grouping of claims does not arise "*out of* the same transaction or occurrence." *In re Price,* 42 F. 3d 1068, 1073 (7th Cir. 1944).

For these reasons, the Court will allow Counts 1-6 and Count 9 to remain in this action, as

they are against a common group of Defendants. *See* FED. R. CIV. P. 18. Counts 7 and 8 will be severed into a new case.

### Counts 1 and 3

Count 1 will proceed against Garcia and Quinn for the use of excessive force against Plaintiff on April 2, 2022. Count 3 will proceed against Garcia for the use of excessive force on April 6, 2022.

### Counts 2, 5, 9

The Fourteenth Amendment Due Process Clause provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. To pursue a due process claim in the prison discipline context, an inmate must show that (1) he possessed a protected liberty or property interest and (2) was deprived of that interest without due process. *Zinermon v. Burch*, 494 U.S. 113 U.S. 125 (1990); *Westefer v. Snyder,* 422 F.3d 570, 585-86 (7th Cir. 2005).

The Due Process Clause "does not necessarily protect prisoners against the imposition of disciplinary segregation." *Williams v. Ramos,* 71 F. 3d 1246, 1249 (7th Cir. 1995). A prisoner has no protected liberty interest in housing in the general inmate population, except in the rare instances where his "segregation conditions…constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000) ("the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). The Seventh Circuit Court of Appeals has indicated that when a term of segregation is limited, typically to periods of less than six months,

"an inmate's liberty interest in avoiding segregation is limited or even non-existent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 & n.2 (7th Cir. 2009) (collecting cases).

After receiving constitutionally inadequate disciplinary hearings with biased adjudicators, Plaintiff claims that he was sanctioned to ninety days in segregation following the first disciplinary hearing (Count 2), seven days in segregation following the second disciplinary hearing (Count 5), and twenty-eight days in segregation following the third disciplinary hearing (Count 9). These relatively short stints in segregation in conditions similar to what he experienced in administrative segregation[2] do not invoke due process protections, and Counts 2, 6, and 9 are dismissed. *See Hardaway v. Meyerhoff,* 734 F. 3d 740, 744 (7th Cir. 2013) (inmate not deprived of liberty interest when he spent six months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *Marrion v. Columbia Corr. Inst.,* 559 F. 3d 693, 697 n. 2 (7th Cir. 2009) (collecting cases regarding relatively short periods of segregation that do not trigger due process protections); *McCoy v. Atherton,* 818 F. App'x 538, 542 (7th Cir. 2020) (holding that three months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship); *Obriecht v. Raemisch,* 565 Fed. App'x 535, 540 (7th Cir. 2014) (finding that 78 days sleeping on a mattress placed directly on a wet floor was deplorable but did not invoke a liberty interest).

### Count 4

Plaintiff claims that starting with his placement in segregation on April 2, 2022, and throughout his ninety-day segregation sentence, Garcia and Quinn subjected him to cruel and

---

[2] The key comparison when considering whether the conditions are significantly harsher "is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks,* 128 F. 3d 1173, 1175 (7th Cir. 1997). Plaintiff states that prior to being found guilty to the first disciplinary ticket, his cell was filthy, his mattress taken, his cell flooded, and the water to his cell was shut off by staff. (Doc. 25, p. 6).

unusual punishment in various ways. (Doc. 25, p. 6). They removed his mattress, tampered with his water by increasing the pressure and then having running water to his cell completely suspended for days, denied him meals, and refused to provide him supplies to clean his cell that was covered in feces. He informed Schoenbeck about the mistreatment, but Schoenbeck did nothing to help. Plaintiff has sufficiently plead a claim for an Eighth Amendment violation against Garcia, Quinn, and Schoenbeck. Count 4 survives preliminary review.

### Count 6

Plaintiff asserts that following the disciplinary hearing on July 12, 2023, at Schoenbeck's direction, a correctional officer maced his mattress and turned off the running water to his cell. (Doc. 25, p 7). For seven days, he was without any water to wash his eyes, body, or mattress. The mace from the mattress burned his arms, eyes, throat, and body. These facts have stated a viable claim for an Eighth Amendment violation. Count 6 survives merit review.

### INJUNCTIVE RELIEF

In the Second Amended Complaint, Plaintiff requests monetary damages and injunctive relief in the form of expungement of all incorrect tickets, immediate transfer to a medium-maximum security facility due to ongoing retaliation by staff, a federal investigation, and approval for "either house bill 3755 or 3779." (Doc. 25, p. 22). Although, there are no surviving claims against Warden Wills in this lawsuit, Wills will remain a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered.

To the extent Plaintiff is seeking a temporary restraining order or preliminary injunction in the form of a prison transfer, the request is **DENIED**. In order to obtain emergency injunctive relief, a plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without

the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). Plaintiff's request fails to meet any of these requirements. Notably, he has not shown how he is at risk of irreparable harm or how the injunction would preserve the status quo until the Court can rule on the merits of the case. Furthermore, he has not filed a separate motion for a preliminary injunction or temporary restraining order pursuant to Federal Rules of Civil Procedure 7 and 65.

### DISPOSITION

#### *Severance*

**IT IS HEREBY ORDERED** that **COUNT 7** against Defendants Phillips, House, Quinn, Keifer, and Schoenbeck and **COUNT 8** against Defendants Quinn and House are **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) The Second Amended Complaint (Doc. 25);

(2) Motion for Leave to Proceed *in forma pauperis* (Doc. 3);

(3) This Memorandum and Order.

The only claims remaining in this action are **COUNTS 1-6** and **COUNT 9** against Defendants Garcia, Quinn, Wills, Schoenbeck, Jones, and Kenner. The Clerk of Court is **DIRECTED** to **TERMINATE** Phillips, House, and Keifer as defendants in this case.

#### *Merits Review*

**IT IS HEREBY ORDERED** that **COUNT 1** shall proceed against Garcia and Quinn, **COUNT 3** shall proceed against Garcia, **COUNT 4** shall proceed against Garcia, Quinn, and Schoenbeck, and **COUNT 6** shall proceed against Schoenbeck. **COUNTS 2, 5**, and **9** are **DISMISSED without prejudice.** As all claims against Jones and Kenner are dismissed, the Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants.

Because Plaintiff's allegations involve physical injury, the Clerk of Court is **DIRECTED**

to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Gracia, Quinn, Schoenbeck, and Wills (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Second Amended Complaint (Doc. 25) and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 31, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**